All rise. This court is now in session. Please be seated. Would the clerk call the next case, please? 3-17-0076, Timothy Burtis, Appellant, by Karnina Johnson, v. Board of Education of Ottawa Township High School District 140, Appellee, by William Gleason. Thank you. Ms. Johnson, good afternoon. Good afternoon, Madam Co-Chair. Pardon? Madam Co-Chair. Yes. You may proceed. Thank you. May it please the Court, my name is Karnina Fort-Johnson. I represent the appellant in this teacher dismissal case, Timothy Burgess. Mr. Burgess is a married father of two, a professional teacher and a teacher's assistant. He was a professional educator, teacher, and coach, employed by Ottawa High School District from August of 1989 up to and through January 2015. This is when he was unlawfully stripped of his teaching tenure rights and employment by the school district, based on comments that he made in a union meeting. We are asking the Court to please reverse the decision of the trial court and reinstate Mr. Burgess with full back pay and lost benefits pursuant to Section 2412 D-10 of the Illinois School Code. Now, when the Beggs case rendered by the Supreme Court of Illinois was decided, it created a situation where there were some changes. But it never really was one anticipated, and that is that the districts would be able to fire away an employment of tenured teachers at will. There are still very much clear and distinct limitations within the law that must unacritically be followed before a tenured teacher can lawfully be dismissed. In determining Mr. Burgess' fate, the Board erred in three major ways worthy of reversal. First, the Board of Education's modified factual findings were against the manifest weight of the evidence. The Board has not proved the most contested statements were made, so therefore no cause was for dismissal. The two comments at issue related to underage females and another comment related to a threat of a slap, they just simply were not proved. The Board also failed to prove cause to terminate Mr. Burgess in connection with comments made at the December 2014 ambush, so-called investigatory meeting with Mr. Burgess by the school district attorney and with the superintendent, Mr. Winchester. Secondly, the Board erred in determining that the proven conduct, the conduct of, okay, sit down little man, and the hairstyle comment that was made was cause for dismissal. This is because the comments were made in connection with a union meeting. Thirdly, the Board erred when it found Mr. Burgess' conduct was a violation of the Notice to Remedy because there was no clear and material breach of the Notice to Remedy that was established. Now turning to the standard of review, since the Supreme Court has changed things a bit, it's made it clear that deference must be given to the decision of the Board. Nevertheless, there is a two-step administrative review process that must be followed prior to a teacher dismissal. First, the Court is to review the Board's decision to modify and supplement the hearing officer's findings of fact. And once that's done, you take that and look together with the factual findings of the hearing officer, which were unmodified by the Board. Then determine whether those findings collectively are against the manifest weight of the evidence. In addition to the two-step process, BEGS also expressly calls for a review of the entire record. Additionally, BEGS provides specific instruction concerning warning notices, which in this case, the warning notice was a Notice to Remedy that was issued in December of 2009. In BEGS, in paragraph 72, the Supreme Court instructs that, quote, only a clear and material breach of the warning notice that was causally related to plaintiff's past deficiencies would support dismissal. Therefore, this standard should be applied to the Notice to Remedy of this case as well. The Court must also determine whether the findings of fact provide a sufficient basis for the school district's conclusion that cause for discharge exists. Now, this one is really important, and it's important to note because the school district determination of cause and discharge is not automatically true and correct. It is subject to reversal if the decision is arbitrary, unreasonable, or unrelated to the requirements of service. Since discharge is a mixed question of law and fact, the clearly erroneous standard of review applies. It must also be remembered that Mr. Burgess' past record of having worked for Ottawa School District for 26 consecutive years and his excellent reviews can be taken into account as a matter of law. Specifically, Mr. Burgess had all excellent reviews. He was consistently awarded the very highest marks that teachers can achieve under the law. In applying the standard of review described, the school board cannot show cause for dismissal based on the proven conduct of Mr. Burgess. This whole case stems from comments that were made in connection with two different union meetings. One was in September of 2014, and the other one was in November of 2014. The board's findings from these meetings, though, they can't be met against the manifest weight of the evidence because there was absolutely no right to apply its own notion of political correctness regarding the school district. They were at a union meeting. The comments were made, and these two union meetings were totally private. Moreover, it's all against the notions of fair dealings for the school district to take matters a step further and actually impose their own discipline about what happened at the union meeting. Is there authority for that? Well, I mean, there's not necessarily an authority per se that the fair dealings would require the school district to do this. It just is one of those things that you expect to have. When I did some research to find any kind of case law that would specifically say, you know, you cannot interrupt a union meeting, you cannot come into the union meeting and discipline, there is no specific case that talks about that. What I'm really basing it on is the IELRB, the Illinois Educational Labor Relations Board, and their act, in the sense that there's a whole set of laws that protect the union activities. The union meeting took place on school property? Yes, it did, but it was after hours. Do you think it's a different result? Does that matter? To me, the board was imposing rules of professionalism at a meeting that took place on school property. Do you think that's a relevant consideration if the meeting had taken place elsewhere, maybe different? No, Your Honor. I say that because a lot of times there's agreements between the union and the school districts to allow them to use their space to hold their meetings because it's a convenience factor. Often you can meet after school, and so because of that, you have the facility to go ahead and use. But there's absolutely no ability when those arrangements are made for the individual school district to say, okay, well now we're a part of this meeting, now we may interfere in it, now we may come and make some decisions about what you're doing. The decision about the union and how it governs its affairs, it's all based upon what that particular union is wanting to do and deciding to do. I have another procedural question based on my background. I don't have a lot of experience with teachers and termination of teachers. So I see the hearing officer made certain findings. There were a number of witnesses that testified. Was the board present at that hearing, or does the board review the findings of the hearing officer? Oh, yes, the board was definitely there at that hearing, and it was a full hearing where everyone had the right to put on their testimony. The hearing officer was there, cited the case, found the facts. Yes, yes. And then after that hearing, the board amended the facts? Yes, yes. So statutorily, the board has the right to amend the facts. And so the Supreme Court case best decided that yes, you have the right as a school board to go ahead and amend the facts. And when you do that, and if you amend them and modify them, you have to do that on the notion that you believe it's against the manifest way of the evidence. So that's what the school... There were about 117 facts that were amended? Yes, yes, 117. From your experience, because I have little, it seems like a lot of facts. It was very unusual to see such a long list. It really was. Basically, it appeared as though they didn't agree with any of the facts, pretty much, that the hearing officer who sat for three days and heard the case. One more question. Yes. Were any of the board members present at the union meeting? Were any board members union members? No, not to my knowledge. There are no union members. Thank you for clearing up my confusion. Yes. Thank you, Your Honor. Now, not all of this conduct occurred in the union, right? That was performed as a basis for dismissal. The basis for dismissal was the two union meetings of September 2014, as well as the union meeting that occurred in November of 2014, the commons meeting. And in addition to that, there was an investigatory meeting, which we really describe as an ambush because he wasn't given notice. And it just happened quickly. He didn't have representation. He asked for a lawyer and those types of things. Those things happened. And once he was investigated at that point, another reason for the termination given was that this individual was supposedly insubordinate and dishonest during that meeting. So those are the two main reasons why he was terminated. But there was some derogatory comment and altercation outside of the union meeting, wasn't there? Well, it's our position that it was in connection with the union meeting. So it's outside of the meeting itself that this occurred. I guess it's about splitting hairs. I don't think it's splitting hairs. You've got a meeting that's called the border and a meeting that's closed. And then you have activity outside of the meeting? Yes, Your Honor, I understand where you're going with that. On school property. Yes, on school property it is. However, the way that I'm seeing it is more of a broad scope. When you talk about union activity in general. How far does it go? Does it go to the parking lot? Yes, Your Honor. I think that when you're still talking about a union meeting, you're still engaging in union activity pursuant to the Illinois Education and Labor Relations Act. So if you have a personal altercation in a meeting and you leave the meeting and you take it out to the parking lot, that's still part of the meeting? It can be. I mean, it could be a part of the meeting from my perspective. That's your position? Yes. Okay. I'd like to go back to the question of the applicability of the charge with regard to the union meeting. Is it your argument that the union meeting itself is a protected activity? Yes, Your Honor. The union meeting is a protected union activity. And if it is, does that mean that different rules apply than the rules that the school district would normally require? Yes. There are different rules that would apply to protected union activity. There are certain protections under the Illinois Education and Labor Relations Act that individuals who are members have. You also have the right not only to be a part of a union, but on the opposite, you have the right to refrain from being engaged or involved with a union. So it just all depends on the particular circumstances. And if I understood your brief, you were saying that this is a case of first impression in Illinois, but that there are other cases that relate to this? No, Your Honor. The Beggs case was the very first case of its kind to address these issues. And once the Supreme Court finally came down with its decision and made the decision that the deference should be given, not necessarily to what the hearing officer's decision should be, but instead the deference should be given to what the school board ultimately decides. So that was the case of first impression. Oh, no, I was asking about the other issue that you raised, the issue of whether or not the school board's rules apply in a union meeting. And I thought that in your brief you said that there was no Illinois case law on this, but you cited some cases from other districts? Yes, Your Honor. I wasn't able to find a case that specifically and squarely dealt with the issue that's before us, because it is something that seems very irregular and unusual. And your argument is that if there had been a case of this kind, that the Illinois Labor Relations Board would have reached the same decision as the cases that you cited in your brief? Well, I wouldn't say necessarily every single one. I'd have to look at them case by case and say that. But in general, the protections that are afforded by the Illinois Educational Labor Relations Act are ones that, let me just start again, those particular protections that are available will be available to this particular teacher while he's speaking, while he's talking, while he's conducting and doing any type of union activity. The reason why it's before you as opposed to the IELRB would be this particular matter is one where he has the opportunity to be reinstated under the tenure teacher dismissal laws that are very distinct under the Illinois school code. The IELRB doesn't have all the protections and all of the abilities as far as the opportunity to be heard fully and all of those things that are guaranteed statutorily. So that's why it's before us here. But the union meeting wasn't a school function. This wasn't a school board meeting where he was allegedly disrespectful either during or shortly after the meeting. That's exactly right. That's exactly right. This is a private nature. It's a closed group. Can I walk into a union meeting? No, your honor, you may not. I remember when I was campaigning. I didn't get into all of them. So they can close the doors. Yes, absolutely. Absolutely. It is their meeting. So you're only there if you're welcome to be there. Correct. Once again, is there or was there? I mean, you've got the meeting very broad. Was there conduct outside of the meeting in violation of this notice? Isn't that really the genesis of this? I want to briefly interrupt here. The audience should not be responding. This is an important point Justice Holder just tried to make. And anybody who is responding, I'm going to ask the bailiff to remove from the courtroom. I'm sorry, Justice Holder. Okay, fine. I didn't hear anything. This begins with we're talking in procedure, in time, a notice of remedy, correct? That set the broad parameters. The notice of remedy occurred in 2009 regarding. Correct. Yeah, go ahead. I was going to say regarding an incident that happened that was in public in a public nature before the school board where public was invited. So that was the notice of remedy. Okay, but it had different components to the notice, things that were to be ceased and desisted from. Yes, Your Honor. There were some other components. Conduct. Yes. Okay. And so that provides the foundation for the subsequent alleged violations, correct? The foundation? Well, I mean there was notice to remedy to not do these things, correct? Yes, Your Honor. Very simply. Yes. Okay. And the allegation basically is things were done in violation of that notice of remedy? Yes. Yes, Your Honor. That's why I mean the foundation. So there was notice, don't do these things. Now, how far afield is the jurisdiction on that prohibition to do those things? Ma'am? It's my position that after a certain amount of time, those things have just fallen off. I mean it's taken, you know, we're talking 2009 all the way up to 2015. It's been six years. It's been six years. Okay. Yes. And since then he's had no other infractions, no other issues with anyone, nothing in his disciplinary record. He took that notice to remedy very seriously until this 2015 incident where he was in a private meeting in a private setting where, you know, they were really having a contested heated debate about whether or not they wanted to put a vote of no confidence. I'm trying to ask this question. Yes. How long does this go on for, these notices, these requirements of the notice? For the rest of the professional career? Well, you know, I have certainly seen some where they've included the language where there's a sunset to them. That's what I get. So the sunset that I've seen typically or that I'm typically able to negotiate when I'm speaking and settling is five years. I've seen them three years. I've seen them one year. That's a time restriction. Yes. Is there a place restriction? A location restriction. Yes. Well, you know, I mean, that's a good question, Your Honor. I think that you'll see cases where people are on the Internet, and I think I cited one of those cases where they're going back and forth and they're saying what they think about the union. At some point the discipline can't come in because it's a protected activity. So I don't necessarily think it has to do with the physical space that you're in. It's not connected to that. It's more about you're engaging in this union activity that is protected. So your position is that, well, I'm thinking grocery store, restaurants, church? Absolutely, Your Honor. A meeting could be held in church. A meeting could be held in the grocery store. Not the meeting. I'm talking about the prohibited activity. Is it still actionable if it occurs in a different place? So, yes, you're talking about off-duty conduct. And so that concept, yes, a teacher is held to a certain standard where if there is off-duty conduct that occurs, it has to be very specific, though. It has to be one where if it does occur, it has to interrupt or disrupt the school districts. Well, yeah, one of these had a nexus. Yes, absolutely. How far field, how far ranging is that? Well, it's a case-by-case analysis. Okay, what you're saying, this case has a safe harbor where this conduct can be engaged in, but it's protected conduct, correct? Yes, Your Honor. That's the essence of your argument? Yes, Your Honor. Okay. Is the nature of the vote relevant to the outcome of this case? In other words, if the vote had been on where to hold the next annual meeting and tempers got hot, that would be union business. But this particular vote impacted or reflected on an administrator? Yes, it was very unusual in the sense that basically Mr. Burgess was advocating for a vote of no confidence against the superintendent at that time. He's since left early because he still had two years on his contract. Does the nature of that vote make it school-related business rather than union-related? No, absolutely not, Your Honor. Whenever we're talking about union activity, they certainly have the right to engage and talk about school matters, and in particular about whether or not they feel like they're getting what they need from their employer, what the problems are with their employer. You know, should we make some changes? Should we request this? How should we handle things? That's the typical nature of a union. Thank you. You will have five minutes for rebuttal. Thank you, Your Honor. Mr. Gleeson, good afternoon. Good afternoon, Your Honor, and may it please the Court, my name is William Gleeson, and I represent the Board of Education of Ottawa Township High School District 140. Your Honors, the Board of Education's decision to terminate Mr. Burgess was not arbitrary, unreasonable, or unrelated to the terms of his service. Since the evidence in the record supports the factual findings made by the Board of Education, this decision should be affirmed by this Court. Jumping into some issues that I think the Court felt were important, I think the union activity issue has a couple different things that counsel didn't address. The first is, as we step forth in our brief, the Illinois Educational Labor Relations Act is a limited forum area. If you want to raise violations of the act, you are required under Illinois law to only raise them before that adjudicative body, and that's based upon the Supreme Court's holding from 1988 in the Board of Education of Community Consolidated School District 1 versus Compton. Here, the union and Mr. Burgess very clearly had the ability to go and file a charge of a violation of the Illinois Educational Labor Relations Act that they felt that it was violated, and that body had all of the authority under the act to impose any order which it determined was just and equitable, and it's extraordinarily broad in its ability to enter orders that are remedial. There is an entire procedure, both regulatory under its rules and statutorily as to how these matters proceed. There's discovery, there's witnesses. All of that aside, the jury process issues, is one of the remedies of reinstatement? Absolutely, Your Honor. And one of the cases that the union, in fact, cited in its brief to you is a Fourth District case called Hardin, and one of the issues there was whether or not a teacher was terminated in violation of the act. They actually ruled against her, but they have the authority to reinstate teachers, and they actually have the authority to reinstate teachers and award them tenure. They have held that their powers are that broad. So it has very broad authority to instigate remedial action. In the union's brief, they initially started off with an allegation that we violated the act, and for those reasons, I don't even think they can raise it before this body at this point. But even if they did, what they're arguing is that Mr. Burgess was terminated in violation of the act because he was at a, quote-unquote, union meeting. It's not quite that simplistic to make a legal claim under Sections 1481 or 1483 of the Illinois Educational Aid Relations Act. You need to show more. You first have to show that your activity was protected. Here, the findings of the Board of Education, which are viewed against the manifest weight of the evidence, were that his activities were not protected, that he was harassing other employees, and that he got into an argument with another employee and made fun of his appearance and his hairstyle and told him, you need to cut your hair so you can understand what I'm saying, as he's standing at him and pointing a file folder in his face. Then, because that wasn't good enough, he threatened to smack or slap the employee upside the head. Now, this occurred in which setting? This occurred after a quorum was lost in a union meeting, but both Mr. Burgess and all the other witnesses testified that this had nothing to do with the union's business and it was a personal dispute between the two. But it occurred in the same room. Nobody left. The first instance occurred in the same room before anybody left. The second instance occurred while the gentleman was walking out of the room, and the meeting was very clearly over and there was nothing left to be done. But, you know, they told you that there's no cases that discuss harassment of other employees in Illinois or in other areas, and quite frankly, they're misguided. The case that we cited in our brief is an ILRB case from 2016. Is the allegation he was harassing employees or harassing a fellow attending the same meeting? Employees who were at the same meeting. I mean, Justice Wright, you asked questions about was the board in the union meeting? No. Just wondering. Correct. No, they weren't. But the complaints about what happened at the meeting came from people who were invited to the meeting who were employees. Who testified. Correct. And Mr. Dorff filed a written complaint saying, these things happened to me. I think that they're inappropriate and unprofessional, and he asked that the district do something about it, which is what caused the investigation. So the board wasn't in there trying to figure out what was going on at the union meeting. The members, the employees, were the ones who brought complaints to light, and the investigation that took place. I only asked that question to make sure that there was a neutrality to the board. Sure. They weren't attending the same meeting. No, Your Honor, they were not. Those concerns were clear. Correct. But we did cite a case in our brief, which is Brumman Educational Support Team versus Brumman Community High School District 228, where the labor board made it very clear that harassing other employees is just not activity that's protected under the act. If that happened at church, at a church meeting, and both teachers were there and the same conduct about hairstyle occurred, do you think it would also be grounds for termination? Well, an employee with this disciplinary record? Perhaps. But to me, to answer Justice Holder's question. Perhaps, good enough. Well, it depends on a case-by-case basis. So if Mr. Burgess would have never had a disciplinary record and would have never had a notice to remedy, I'm not sure that that would happen. Let's only change the fact that the meeting took place at a church and the meeting was over, the meeting pertained to church business, and these comments were made, the little man comment and the long hair, cut your hair so you can hear me better. Right, and I think there's the rub, Your Honor, is if it pertained to church business or if it pertained to something that had nothing to do with the fact that these were two employees, this had to do with the fact that they were two employees. So it's an employee who's coming to complain that I'm being harassed. Two employees. Two employees. Third employees first. And this clearly had to do with the school district. It was they were only in that room because they were employees, whereas they could be at the church because they're members of the same congregation or whatever. But to answer the next question, you have to look at whether it has anything to do with this. You're going to answer that. Correct, Your Honor, and I think it's not so hard and fast, but it depends on what it's about. People engage in off-conduct activity all the time that leads to them being terminated. I mean, I can cite to you four cases that involved teachers that involved off-duty conduct that was considered sufficient cause. The Bordovet versus Payne, McCullough versus Isby, Ahmed versus Bordovet, Scott versus Bordovet. In all these cases, most of them involved activities that people did outside of school that resulted in them getting convictions for criminal misconduct. In the case of Ahmed, a young lady misrepresented her position with a charity outside of work. And in all those cases. But these words didn't rise to the level of a criminal offense. It wasn't even charged as a disorderly conduct. No, I don't know that anybody ever went to the police department about it. There are some First Amendment considerations, and I don't think anything that was said would rise to the level of criminal conduct. Sure, and the First Amendment concerns are a little bit different, and the test for whether or not that's protected under the First Amendment is completely different. A lot of school activities that result in criminal arrests will result in termination, but this is far from that. No, Your Honor, the cases that I presented to you had nothing to do with conduct that the employee did while at school. It was all off-duty, just happened to be there. Correct, but it had nothing to do with school. In the McCullough case, the guy got convicted of failing to file a tax return. And that was held to be sufficient cause by the appellate court to terminate somebody. So you can get into, there's a lot more police and fire cases that involve off-duty, out-of-work behavior that would subject those. Well, there are three elements to this notice to remedy, and I think, you know, I just pointed out nexus. That's one. Correct. Then there's two others, which are very broad. Correct. Very broad. And, for example, conduct himself in a professional manner at all times and as a role model for students at all times. Pretty broad. Cease and desist from referring to staff in a derogatory, inappropriate, or unprofessional manner. Correct. All those are broad, subject to varying interpretations of whether the conduct's in violation of the notice to remedy. Correct? Well, maybe in some cases, but not here, Your Honor, with all due respect, because the conduct that Mr. Burgess engaged in here, he admitted it was derogatory. So he admitted that he violated the notice to remedy. Okay. Then who's to make the findings of whether it is or it is not? The fact finder, which would be the Board of Education. Ultimately, the Board of Education, which is what we're under reviewing the decision right now. Correct, Your Honor. Against? The manifest way to the evidence and the factual finding. Correct. Okay. And so, I mean, you have to look at this particular employee's disciplinary history and why the notice to remedy was drafted the way that it was. Because there has just been a longstanding misconduct towards employees and parents and board members. Do you really have to go back into the history? Does the Board have the power? If a notice to remedy is based properly and issued properly, do you have to go back to that? Or is it from that point forward conduct that's actionable or not? You don't have to go backwards, Your Honor. I think in this case, the notice to remedy referenced all those prior incidents of misconduct because the Board of Education, in attempting to warn the employee of the conduct which it wanted, wanted to make clear to him that there was varying circumstances and situations where he had done things that were inappropriate. That's the justification for issuing the notice to remedy. It's contained in the notice to remedy. Right. But arguably, you could challenge the notice to remedy. Could you not or not? You did. This employee challenged the notice to remedy. He filed an unfair labor practice charge, and he challenged the fact that we had the authority to issue it. And the Labor Board determined that the Board of Education had the authority to issue it and that it was appropriately issued. Okay. And that evidence is in the record before the court. So we're not really talking about that past conduct. We're talking presumably dismissal was based on from the notice to remedy to the dismissal conduct that occurred within that period of time. Correct. The dismissal was based upon the conduct in September and November of 2014 and the repeated dishonesty after being directed to tell the truth in December of 2014. And there was no sunset provision on the notice to remedy? No, Your Honor. On its face, it says this will remain in your personnel file for the remainder of your employment. Okay. And how about location? I mean, time and place, you know, limitations can be put on. Sure. And agreed to. They could, but they're not required. There are collective bargaining agreements that you will see from time to time that require things to come out after a period of time. The collective bargaining agreement in this case didn't require that. And you could negotiate to have it to sunset after a certain period of time, but that didn't happen here. And there were no place restrictions? There was no place restrictions on it whatsoever. It had to be an access to the school. That was what was placed on it. And how do we define that access to the school? Well, you know, Your Honor, I think the easiest way to look at it is there's a lot of, there's not as many educator dismissal cases, but there are a lot of student discipline cases, and they look at what is a nexus to the school. So students who do things off campus from time to time, they are subject to discipline, even though they did things off school grounds. To take Your Honor's point, if they walk across the street to have the fight, if they set the fight up in school and they're fighting because something happened at school, that's a nexus to the school environment, a case that there is a reported decision on with a group of students who went to the forest preserve to abuse and harass one another. They said, Judge Gettleman downtown said there was certainly a nexus to the school environment there as well. So are we saying generally that if you are a teacher, your nexus to the school is 24 hours a day because of your status as a teacher? It could be. It could be, especially with the advent of social media, and you will see lots of cases where people have done things on social media or they've done things off hours. Oh, I've had cases where it's been criminal conduct. Well, those are the cases that are reported, but there are other cases where even the Board of Ed, with Brumman High School District case that I cited to you, there was no necessarily criminal conduct there either, and one of those was a meeting that was clearly off of grounds that the ILRB felt that that was sufficient. Well, following up on Justice Wright's hypothetical, modifying it somewhat, we have a church meeting and an employee of the school and the individual subject of this case have a disagreement about how the minutes of the meeting were kept. The church meeting? Yeah. Oh. Yeah. Or the treasury report or something like that, some church organization in the church hall, and there becomes a discussion that arguably might be hurtful to one party or the other, might be derogatory, unprofessional. Is that access to the school? If the conduct is based upon what they're doing for the church, probably not. But if they're at the church meeting and they start off with saying, hey, I don't like what you did in fifth period the other day, and they start berating them, then there has been a nexus created, even though they're at the church meeting. I'm just trying to fully understand the scope. Right. I understand. I don't think there are students at church meetings. Well, I think that makes it more severe that you're now acting unprofessional in front of students because the school code and the Illinois educator ethics both require you to act as a role model for students. And, frankly, the ethics that are in the administrative code require you to have a professional environment with other employees. So there was no dispute here that Mr. Burgess understood and knew that he was supposed to act appropriately and professionally towards others. He testified, and it's in the record, that he understood that from the very beginning of his employment. So I don't know if the rest of us teachers have to be perfect. No, Your Honor. And I don't think that the Board of Education asked Mr. Burgess to be perfect. They had an employee who had a repeated history of having outbursts and then demeaning others. And they told him that we wanted to stop. They didn't ask him to do anything that was really very difficult to comply with. They asked him to treat other people professionally, appropriately. And that's not what he did. He yelled at people. He made fun of people. He called an educator a pedophile, which is basically the death sentence for an Illinois educator to be called a pedophile. If that actually got charged, even the allegation could ruin someone's career. And then to be brought into a meeting where you're directed to tell the truth. Well, calling a no-confidence vote can also ruin somebody's career. Sure. Emotions had to be terribly high at that meeting because the vote was a tie. So don't we have to consider, or didn't the Board of Education have to consider that context? It's not like Mr. Burgess asked for a no-confidence vote and got a vote of 10 to 2,000. Emotions had to be high on both sides. Well, with all due respect, Your Honor, the vote didn't even take place at the first meeting where he was berating the appearance of others. And when the vote took place at the second meeting, the meeting was over. And he wasn't happy with what happened, so he decided to address one of the individuals he felt was wrong for that. And he referred to him as little man to put him down again. And then the pedophilia comma comes out. And that's after the meeting occurred. And under the standards of review before this court, there is sufficient evidence in the record. They don't allege that there's no evidence in the record to support the factual findings. They just say you should have gone in our favor instead of theirs. The word pedophile used? It was you're all over underage females. Yeah, the word pedophile was used. And isn't it disputed whether that was even the comment? Unless he was walking away? The testimony of Mr. Durer was that he heard it clear as day. Don't you think Mr. Durer's emotions were just as high as Mr. Burgess's emotions? And, you know, I've been doing this job a long time. And sometimes emotions color what people hear. You can have a room of 10 people, and they'll all report hearing or seeing a different event. Sure, Your Honor. I would point you just with respect to the case of People v. Bray, which just came down from the Supreme Court in September. And it involves the sufficiency of evidence in review of a criminal conviction, which is similar to the manifest weight. And in that case, there was only one witness to the allegation who was so intoxicated that she couldn't recall being stabbed or biting someone. And the Supreme Court held that her testimony was sufficient to sustain a criminal conviction. Here Mr. Durer testified clearly under oath that he heard it. There was no doubt what he heard. He said it was plain as day. And I had to ask myself whether it was even asked, he stated, but he said it was plain as day that he heard it.  No, Your Honor. No one else testified that they heard it. Mr. Markson had testified that he heard the debate going back and forth between the two, but he had stepped out in the hallway and didn't hear the coup de grace statement. So when the ambush, as your opponent calls it, that meeting occurred, was that the discussion of be truthful, tell us what happened? May I respond, Your Honor? There was a direction provided at the beginning of the investigatory meeting that you're going to be asked questions, and you're to answer them truthfully, correct? Right. So by whose measure is truthful? The fact finder, which is the Board of Education. But the board wasn't at that meeting. No, Your Honor. That was the administrator that had the no confidence vote? There was myself, the superintendent, Mr. Cushing, and a union representative that had been requested by Mr. Burgess. Some of the information that was suggested was untruthful. For example, the question that was asked was, did you do anything in 2014-15? And the response was, I didn't do anything at the time that was in the letter. And then there was a follow-up question, and I suppose that one could call that dishonesty, but one could also call it trying to narrow the time frame to be sure that whatever you're saying is accurate. Sure, Your Honor. The testimony that's in the record as to the responses to the questions were to pick up the written complaint to say, that didn't happen on the day of the complaint. The same question would be asked again. He would say, it didn't happen during the workday. The same question would be asked again, and he would say, I don't recall. Except then he testified at the hearing here about all of the interactions that took place. So he clearly knew what happened, but he decided to say, I don't recall. That's before we get to the disputed statements, which were determined by the Board of Education to have been made, which he very plainly denied. But here you even have him, when his own lawyer asks him, why didn't you tell them about these other things that took place between you and the other teachers, which he had stated basically that was some of the reason why some of this went on. It was their fault. And he said, well, it was a union meeting, and I was trying to be very cautious about what I told them. But if he didn't recall what happened, his answer should have been, I didn't tell them, because I just didn't remember. But that's not what he said. He said I didn't tell them on purpose. I have one question, though. Yes, Your Honor. May I ask? Did you, pardon? I was asking to your chair if I may answer your question. Of course you may.  He has a right to ask as long as he wants. Yes. Thank you, Your Honor. Can you address very quickly and succinctly our standard of review? The standard of review on the factual determinations of the Board of Education is manifest weight. The standard of review on whether cause exists is clearly erroneous as to whether or not the decision was arbitrary, unreasonable, or unrelated to the requirements of service. And the level of deference given? The level of deference given to manifest weight of the evidence would be under the administrative review law the facts are determined to be prima facie true and correct. And the deference and the clearly erroneous standard is essentially, it's not whether you would have come to the same conclusion. It's not whether, you know, someone else would have come to the same conclusion. It's whether any reasonable person would have come to the conclusion that was reached by the effect finder. Thank you. May I ask a question? Yes, Your Honor. You know, we've had some exchanges between you and me here today. Yes, Your Honor. Will you leave this room and say I was unprofessional? Absolutely not, Your Honor. Because sometimes during the course of figuring out issues that people view differently, words are not carefully chosen. So one man's unprofessional may be another man's professional. And this particular person, what was said on the days in question, was it quite as bad as some of his past? Sure. Can you respond to that? I would say two things, Your Honor. First of all, How do you measure? First of all, I hope you don't feel I've been unprofessional. Absolutely not. Absolutely not. After what I was just trying to say. I understand. Secondly, Your Honor, the things that found their way into the charges for dismissal, I think we could all agree, making fun of people's appearance and demeaning them in that way and threatening to slap them on the side of the head, those seem to me to be pretty simplistic. We're not talking about they were kind of yelling at each other. It was more that it got to a level where it seems to me to be something that was patently disrespectful. Frankly, we would discipline the students for doing that. Thank you for your question, and I appreciate you indulging me. Thank you, Your Honor. Thank you. We would ask that you affirm the decision of the Circuit Court and Board of Education. Thank you. Okay, thank you. Ms. Johnson, rebuttal? Well, I wanted to clear up one thing. The comment about the pedophilia, as he's saying, that really wasn't made. What was said about that in particular But that is what was heard. Yes, yes. And that's just the point I was trying to make about respect. Yes, and these are the important things to take away from that comment, I think, that neither the trial court nor the hearing officer believed that Mr. Burgess made the comment after the review of the entire record of more than 1,000 pages. Mr. Burgess consistently denied the comment from the very beginning, starting from the ambush to present date. It was Mr. Doar who testified that he was called in to speak to Superintendent Winchester about an allegation that involved him and his involvement, his own involvement with an underage female in the neighboring county. And the superintendent, Mr. Winchester, then called DCFS about the matter. So I think if we go back to the record, I think that it's a mis- Perhaps there is an area where he says unequivocally he did not say that, but there also is an area in the testimony that specifically Mr. Doar testified that he may have misunderstood Mr. Burgess. Is that one of the facts that the Board of Education changed? Yes, Your Honor. And another comment was made about the IELRB. And yes, he did challenge the notice to remedy. Mr. Burgess did. And the IELRB did make a specific finding that there was union animus found with that particular case related to the board meeting and the public outburst. So I just wanted to clarify that. And then as far as the conduct that happened inside the meeting, you know, here's the thing. Tempers are flaring up. There's plenty of testimony where individuals say, you know, during a meeting, sometimes we cross the line of being unprofessional, sometimes we get heated. It was a very heated and tense situation. Superintendent Winchester, although he wasn't there, he was almost there in the sense that his wife is a member of the union and she was present and was speaking against blocking the vote of no confidence. And also, Superintendent Winchester also testified that he himself had been in contact with the three major witnesses, Doar, Cartwright, and Marks. So he had been in contact and in communication with them prior to the vote of no confidence. Once the vote of no confidence occurred, then he immediately was the person who was the front runner. He, meeting the superintendent, he was the front runner of the investigation into this matter. And when he had the investigation, which I have been calling the ambush because it was, he had the opportunity per board policy to step out and allow another person to run it. But he chose to do it himself. And Mr. Burgess was in that room being questioned by both the counsel who he just spoke with, as well as the superintendent about his own activities in that union meeting where Mr. Burgess was the one who specifically wanted the vote of no confidence to go through. So it was just one of those situations that's unique in the sense that the superintendent could have stepped down, but he chose not to. So I just wanted to clarify that as well. And when it comes to the off-duty conduct, it seems to be some questions around that. I just want to clarify that there was no criminal charges whatsoever. We really are talking about a situation if, you know, you go with what the hearing officer decided as it related to the comment about, you know, the underage females, if you consider that that was not part of the record, you really are down to whether or not someone should be terminated for saying, in the context of a union meeting, I ought to slap you upside the head, is out as well. Because like I said, that's something that he did not say. But the question really is, is he going to be fired? And should he remain fired just because he said to someone, sit down, little man, and if you move your hair away from your ears, maybe you can hear me. That's the last one. Could you clarify the propriety of bringing this action here rather than before the labor board? Yes, Your Honor. So there was a previous counsel who started this, who has since retired. And I was not, you know, with him or privy as to why he made the decision to go one way or the other. But when you talk about teacher dismissal, like I said, there are statutory rights that one who is fired gets under the Illinois school code. And one in particular has to do with the notices that they get. So in the very beginning, once he's terminated, he must get, per the statute, what you saw, which was the bill of particulars. And in addition to the bill of particulars, he also must get a notice saying, you have five days, you know, or it may not be five days, but you have a certain amount of time to go ahead and ask for the hearing officer and to begin that process. So the process is initiated by the school board per the law. So once we had that, and like I said, I can't speak for the counsel because I never did ask him that question, but I would assume that, you know, he probably already knew that IELRB would find that there was union animus because they did it before, but the point and the focus for us as a union is to go ahead and get his job back. So at that point, we wanted to go with the hearing officer. But opposing counsel said they have that remedy. Well, I hear what you're saying. So before, you kind of let us believe they didn't. Let me apologize if I misled you because that was not my intent. Okay. Well, taken. It's accepted. But they have that remedy of reinstatement. I'm not sure about that, Your Honor. I mean, I've heard the counsel say that. I'm not aware of a situation where there's a 10th. I guess it's because of the way the system is. The system is that this employer has to give that notice. And so once that notice comes, then you start that process. I don't think you would just then say, well, no, let's not do this process, skip this, and let's go over here and try to do the IELRB. But you already have an IELRP statement of unanimous in a prior proceeding. Perhaps. That's a call for an individual attorney. It's a strategic choice made by counsel. Yes, yes. Okay. Counsel's time. Are there any other questions? Do you want to just sum up? Just to sum it up, we request that you reinstate Timothy Burgess with full benefits and back pay. Thank you. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in brief recess for a panel change. All right. The court stands in recess.